IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michelle Chapman,           )<br>                             )<br>           Plaintiff,         )<br>                             )<br> vs.                         )<br>                             )<br> County of Greenville and    )<br> Greenville Workforce Development, )<br>                             )<br>           Defendant.        )<br>                             ) | Civil Action No. 6:06-2623-RBH-WMC<br><br>**ORDER AND**<br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' amended motion for summary judgment (doc. no. 22) and motion to strike certain testimony from the plaintiff's memorandum in opposition to the motion for summary judgment (doc. no. 35). In her complaint, the plaintiff alleges that the defendants subjected her to sexual harassment and that her position was eliminated in retaliation for her participation in an internal investigation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

## FACTS PRESENTED

Employees of Workforce Development are employed by Greenville County (Kernell aff. ¶ 3). Workforce Development provides services and training for displaced workers and disadvantaged youths. 29 U.S.C. §§ 2851 and 2861. It is funded under the Workforce Investment Act ("WIA"). The current Administrator, Dean Jones, reports to the Assistant County Administrator for Human Resources, Vivian Anthony. Anthony was the prior Administrator of Workforce Development and worked with Jones while he was a case manager. During the plaintiff's employment, Laura Bogardus Harmon was a Program Coordinator and later acting Assistant Administrator of Workforce Development, reporting

to Jones (Harmon dep. 7). Harmon was responsible for supervising the rest of the staff of Workforce Development (Harmon dep. 8).

On October 1, 2003, the plaintiff applied for the newly-created WIA Specialist position (pl. dep. 8). In late November 2003, the plaintiff was hired as a temporary employee (pl. dep. 19). Thereafter, on December 15, 2003, the plaintiff became a regular full-time employee of Greenville County (pl. dep., ex. 3). The plaintiff was assigned to report to Dawn Darrington, a Program Coordinator (Harmon dep. 9; pl. dep., ex. 2).

On January 29, 2004, Harmon observed the plaintiff using the computer at the front desk for personal purposes (pl. dep. 44; ex. 5). Harmon subsequently counseled the plaintiff about using computers for personal purposes during working hours (pl. dep. 45-46; Harmon dep. 20). During this conversation, on January 31, 2004, the plaintiff asked Harmon whether Jones made inappropriate comments to every female at Workforce Development, or was it just her (pl. dep. 55). The plaintiff told Harmon that she did not want to pursue a formal complaint, but that she just wanted his behavior to stop (pl. dep. 82). Harmon felt that her conversation with the plaintiff was "important," and she documented it in a typed memorandum (def. Bates No. 5040150).

Upon becoming employed, Harmon had heard rumors that Jones had engaged in affairs with multiple staff members. Harmon discussed this with Jones, who denied such rumors (Harmon dep. 23-24, 26-27). As a result of her background and the plaintiff's question, Harmon asked the plaintiff whether she needed to report improper conduct (Harmon dep. 20). The plaintiff refused to provide any additional information about what she meant by her comment, and when Harmon checked back with the plaintiff the next Monday, the plaintiff told her that there was nothing to report (Harmon dep. 20).

Harmon claimed she did not report this information to anyone (Harmon dep. 22-23). However, at his deposition, Jones testified that Harmon did share the plaintiff's

identity and the nature of her concerns with him, and that he recalls it "vividly") Jones dep. 36-37).

Sometime prior to February 2003, Kevin Hunter, a Coordinator in Human Resources, noticed that the plaintiff was not her "normal self" and asked her what was wrong. The plaintiff told him that she was stressed and that Jones "had been very inappropriate. Hunter responded by saying, "Really" (pl. dep. 83-87). The plaintiff does not remember if she told Hunter any specifics about Jones' comments (pl. dep. 86). Hunter denies that the plaintiff ever told him about any inappropriate conduct by Jones (Hunter dep. 10).

In April 2004, Charlene Gilliam, a Program Coordinator, was terminated from employment by Jones. After her termination, Gilliam filed a complaint with Greenville County. In it, Gilliam alleged that she had been treated unfairly; Gilliam did not allege that she had been sexually harassed. Instead, Gilliam contended that Jones and Harmon placed unreasonable demands upon her and were unfair in counseling her. However, Gilliam alleged that her subordinate employee, LaTesha Robinson, had been subjected to unwanted advances from Jones. Specifically, Gilliam contended that Jones had approached her and reported that LaTesha Robinson had splashed water on him from a water fountain, and Jones told Gilliam to counsel Robinson about her unprofessional behavior. Gilliam alleged that during such counseling, Robinson told her that she had splashed the water because Jones had touched her buttocks.

As a result of Gilliam's complaint, Vivian Anthony and Wayne Mullen of the County's Human Resources Department conducted an investigation and interviewed most of Workforce Development's employees. On April 21, 2004, Anthony and Mullen interviewed the plaintiff in the course of an investigation of Gilliam's complaint (pl. dep. 108). At that time, the plaintiff told Anthony and Mullen about Jones' inappropriate comments and actions, as well as the fact that Jones often asked her about her personal

3

life (pl. dep. 109; pl. dep. 109; def. Bates Nos. 5040375 - 5040376).  She also told them that she felt she had lost a promotion because she told Jones there was not going to be a relationship (def. Bates No. 5040375).  Following the interview, the plaintiff signed a written statement prepared by Mullen (pl. dep., ex. 7).  Specifically, she alleged that Jones acted inappropriately in the following ways:

> (1)   "[He made] [c]ertain comments like, 'Do you have a rubber band?' Held a stack of papers and said, 'Yea, put a rubber on it.'"
>
> (2)   "I was told about a promotion but after I confronted him, that was retracted."
>
> (3)   "He would brush up against me. Most was verbal with the rubber band. Always would say, 'Good morning, Sexy, you have a beautiful smile.'"

(Pl. dep., ex. 7).

With respect to the rubber band comment, the plaintiff testified in her deposition that while she was assisting Jones in organizing documents for an audit, she asked Jones for a rubber band.  The plaintiff contends that when Jones slid the rubber band on the stack he stated, "Yeah, baby, put the rubber on it" (pl. dep. 62).  With respect to the alleged promotion, the plaintiff testified that Jones told her that he wanted to create a position for her to be his administrative assistant (pl. dep. 100, 102).  She admitted that she was later told by Jones or Harmon that the position was not approved by Anthony.  Further, in her deposition, the plaintiff testified that on one occasion, while she was seated in a chair in a conference room, Jones leaned over her and brushed his groin up against her shoulder in what she perceived was an intentional manner (pl. dep. 70, 72).

Gilliam also grieved her dismissal.  Anthony found that Jones and Harmon had not sufficiently documented Gilliam's performance deficiencies and reinstated Gilliam. Anthony determined that Gilliam had not been harassed but required Jones to attend sensitivity training and Harmon to attend management training.

4

In June 2004, Dawn Darrington prepared an evaluation of the plaintiff's performance (pl. dep., ex. 10). Darrington noted a number of deficiencies in the plaintiff's performance and gave her a mediocre evaluation. On June 23, 2004, Jones and Darrington met with the plaintiff to review the evaluation (pl. dep. 119). Based upon this discussion, Jones agreed to increase the plaintiff's evaluation score from seventy-one to seventy-three (pl. dep. 120-21, ex. 10). During the meeting, the plaintiff was given a letter dated June 23, 2004, notifying her that her position was being eliminated and that her introductory period would be extended to September 23, 2004, so that she would have time to find other employment (pl. dep. 122, ex. 11). Jones told the plaintiff that he could not have someone working for him whom he could not trust and that he did not trust her (pl. dep. 122-25). Jones also told the plaintiff that funding for the position had lapsed because there were fewer clients than originally anticipated under the grant (pl. dep. 124).

During this initial extension of her employment, the plaintiff remained an employee of Workforce Development, although she was assigned to work in the One-Stop location at the Employment Security Commission offices reporting to Corrine Davis (pl. dep. 103). When she did not obtain a new position, on September 14, 2004, the plaintiff approached Joe Kernell, the County Administrator, to ask for more time to find a job. Kernell agreed to permit her more time (Kernell dep. 25-26). During the week of September 23, 2004, the plaintiff was advised by Davis that her employment was supposed to terminate. Additionally, the employees of the Employment Security Commission held a party in the plaintiff's honor. The plaintiff became upset and again went to see Kernell who assured the plaintiff that her employment would be continued so she could find other work Kernell dep. 25-26; pl. dep. 136). The plaintiff's employment was continued, and she was placed in the Public Works Department (pl. dep. 141). By letter dated November 22, 2004, Anthony advised the plaintiff that her employment would be extended until December 31,

2004 (pl. dep., ex. 13). The plaintiff did not locate another job within the County, and her employment was terminated on December 31, 2004 (pl. dep. 143).

## **MOTION TO STRIKE**

The defendants have moved to strike certain testimony, information, and documents from the plaintiff's memorandum in opposition to the defendants' motion for summary judgment. The documents at issue involve various employees' allegations that Dean Jones engaged in consensual sexual conduct with other employees or that he harassed other employees. As noted by the defendants, the plaintiff does not rely upon sworn testimony of these employees. Instead, the plaintiff argues that the unauthenticated summaries of statements prepared in connection with interviews of employees are admissible. The defendants argue that the documents are inadmissible hearsay pursuant to Federal Rule of Evidence 802 and inadmissible character evidence pursuant to Rule 404(b). The defendants set out each of the 20 documents in a chart in their motion. *See* def. m. to strike chart 1-20. The plaintiff counters that the documents are offered to show receipt by the defendants of other employee complaints alleging sexual harassment by Jones and, thus, are not hearsay as they are not offered to prove the truth of the matter asserted.

Importantly, as discussed below, since Jones is a supervisor, the plaintiff does not need to prove that the defendants were aware of his alleged wrongful conduct. *See Briggs v.* Waters, 455 F.Supp.2d 508, 518 (E.D. Va. 2006). This court has reviewed the documents and arguments of the parties and hereby grants the defendants' motion to strike as the documents are hearsay and inadmissible character evidence. Accordingly, the court has not considered the disputed documents in relation to the instant motion for summary judgment. However, as set forth below, even without this evidence, issues of material fact remain on two of the plaintiff's three claims.

6

## MOTION FOR SUMMARY JUDGMENT

*Applicable Law*

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

7

the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

***Analysis***

<u>*Greenville County Workforce Development*</u>

The defendants first argue that defendant Greenville County Workforce Development is not a separate legal entity but is instead a division of Greenville County that is funded under the Workforce Investment Act (Kernell aff. ¶ 2). Thus, the defendants argue that Greenville County Workforce Development is not a proper defendant. The plaintiff does not address this issue in her brief and thus does not appear to oppose the motion. Accordingly, Greenville County Workforce Development should be dismissed as a defendant to this action.

8

*Hostile Work Environment*

The plaintiff alleges a claim for hostile work environment sexual harassment in violation of Title VII. "This Circuit has acknowledged that the many forms of sexual discrimination can be categorized, for analytical purposes, into two varieties: harassment that creates an offensive (hostile) work environment and harassment where sexual consideration is demanded in exchange for job benefits [*quid pro quo* sexual harassment]." *Spencer v. General Elec. Co.*, 894 F.2d 651, 658 (4th Cir.1990) (citing *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983)).

> To state a hostile work environment claim, [the plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Bass v. E.I. Dupont de Nemours*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998)). Assuming there is evidence that the alleged harassment was motivated by her gender and was unwelcome, the plaintiff's hostile environment claim still fails because the harassment was not sufficiently severe or pervasive to create an abusive atmosphere or to otherwise alter the plaintiff's conditions of employment. In evaluating whether harassment is severe and pervasive so as to make it actionable under Title VII, the court "must examine the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hopkins v. Baltimore Gas & Electric*, 77 F.3d 745, 753 (4th Cir. 1996) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Relevant cases demonstrate that the incidents alleged by the plaintiff are not sufficiently severe or pervasive to support a hostile work environment claim. For example,

in *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333 (7th Cir. 1993), the Seventh Circuit Court of Appeals affirmed an order granting summary judgment in favor of Coca-Cola in a sexual harassment case.  There, Weiss contended that over the course of three to four months, her supervisor asked her out on dates, put his hand on her shoulder at least six times, tried to kiss her once in a bar and twice in the front office, and placed "I Love You" signs in her work area.  The court found that the alleged harassment was not sufficiently severe or pervasive to support her claim:  "In any case, these incidents were also relatively isolated and no more serious than those in *Scott*."  *Id.* at 337 (citing *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210 (7th Cir. 1986)).

Further, in *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995), the plaintiff alleged that the following acts of harassment occurred over a seven-month period:

- Her supervisor referred to her as "pretty girl" and would make statements such as "There's always a pretty girl giving me something to sign off on."

- Once, when she was wearing a leather skirt, she heard her supervisor make a sound like "um um um" as she was leaving the room.

- Once, when she commented on how hot his office was, her supervisor said, "Not until you stepped your foot in here."

- When an announcement came on the intercom, her supervisor explained that it meant that, "All pretty girls run around naked."

- The supervisor referred to all women as "tilly."

- Her supervisor admitted to her that his wife had told him that "he had better clean up [his] act and better think of [her] as Ms. Anita Hill."

- Her supervisor made a comment about the fact that he had to leave the party early because there were too many pretty women and he did not want to lose control.

- Her supervisor made one comment about dancing like they were in a night club.

10

- Her supervisor said that he was lonely and that all the company he had in his hotel room was his pillow. During this statement, he looked at his hand.

In rejecting the plaintiff's claim and finding that the conduct was not sufficiently severe to support a claim, the United States Court of Appeals for the Seventh Circuit noted:

> He never touched the plaintiff. He did not invite her, explicitly or by implication, to have sex with him, or to go out on a date with him. He made no threats. He did not expose himself, or show her dirty pictures. He never said anything to her that could not be repeated on primetime television.

*Id.* at 431.  The court held as a matter of law that the incidents were not sufficiently severe to create a hostile working environment.

Similarly, in *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745 (4th Cir. 1996), the Fourth Circuit Court of Appeals affirmed the grant of summary judgment because the incidents alleged by the plaintiff did not create a hostile working environment.  In that case, the male plaintiff asserted a claim based upon several sexual overtures by his male supervisor.  The incidents complained of by the plaintiff included allegations that his supervisor bumped into him and stared at him.  The plaintiff also presented evidence of several incidents where the supervisor made illicit comments about the plaintiff's genitalia. Additionally, the plaintiff alleged that his supervisor made comments around other employees to suggest that he and the plaintiff were romantically involved.  The plaintiff even presented evidence that his supervisor tried to kiss him when he was shaking hands with his guests at his wedding.

In addressing whether the alleged conduct was sufficiently severe to create an abusive environment, the court noted that most of the conduct complained of by the plaintiff was limited to ambiguous sexual innuendos.  The court noted that the record was devoid of any allegations of overt sexual propositions.  Additionally, the court noted that the plaintiff did not allege that his supervisor ever touched him in a sexual manner.  Although

the incidents were tasteless and inappropriate, the court concluded that as a matter of law the incidents were insufficient to "interfere with a reasonable person's work performance to the extent required by Title VII." *Id.* at 753-754.

The Fourth Circuit has granted summary judgment despite acknowledging allegations, including the following, regarding a male coworker who acted at times as the plaintiff's supervisor:

- telling the plaintiff's supervisor in her presence that she should be "spanked every day," in response to which her supervisor laughed and agreed;

- constantly staring at her breasts and telling her how attractive she was; and

- installing a security camera pointed at her desk so that he could watch her.

*Singleton v. Dept. of Correctional Educ.*, 115 Fed. Appx. 119, 120 (4th Cir. 2004). The offending conduct occurred approximately four times per week for over a year. The court concluded the behavior was not sufficiently severe and pervasive as to alter the conditions of her employment. *Id.* at 122.

In the instant case, the improper conduct alleged by the plaintiff that could be considered sex-based consists of the following:

- When the plaintiff asked Jones to put a rubber band on a stack of papers, Jones said suggestively to her, "Yeah, baby, put the rubber on it" (pl. dep. 64).

- Jones repeatedly made comments to her such as "Sexy," "You are sexy," "your sexy lips," "Your sexy ass, with your sexy ass self," and "Look at you with your sexy ass" (pl. dep. 70).

- While the plaintiff was sitting at her computer, Jones leaned over her and brushed his groin up against her shoulder in what she perceived was an intentional manner (pl. dep. 70, 72).

- Jones employed a sexually suggestive demeanor (pl. dep. 70).

- Jones asked her where she lived and said he was coming to her house (pl. dep. 73).

- Jones told her that he was "the Director," that he could plan where they would go to conferences, and suggested that they could go to Myrtle Beach together (pl. dep. 75-76).

The harassment alleged by the plaintiff began sometime in December 2003 and continued until she spoke with Harmon in late January 2004. Viewing the evidence in a light most favorable to the plaintiff and considering the factors and cases cited above, the conduct clearly is not sufficiently severe or pervasive as a matter of law. Accordingly, summary judgment should be granted on the hostile work environment claim.

*Quid Pro Quo Sexual Harassment*

The plaintiff also alleges a claim for *quid pro quo* sexual harassment. The defendants allege that this claim was not properly pled in the complaint, and the plaintiff should not be allowed to belatedly raise such a claim. The elements of such a claim are as follows:

(1) Plaintiff belongs to a protected group;

(2) she was subject to unwelcome sexual harassment;

(3) the harassment complained of was based upon her sex;

(4) plaintiff's reaction to the harassment affected tangible aspects of her compensation, terms, conditions or privilege of employment; and

(5) Greenville County knew or should have known about the harassment and took no effective remedial action.

*Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 658 (4th Cir. 1990)*, overruled on other grounds by Farrar v. Hobby*, 506 U.S. 103 (1992).. It appears to this court that the plaintiff's complaint can be read to encompass a *quid pro quo* harassment claim.

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

The plaintiff has come forth with evidence raising issues of material fact as to each of the elements of the claim. Viewing the evidence in a light most favorable to the plaintiff, she has shown that upon rejecting Jones' advances, she was subjected to a

sudden cold and hostile behavior, she was not given a promotion Jones had previously discussed with her, she was given a "mediocre" performance evaluation in spite of Jones' earlier representation that she was performing well, and her job was eliminated. Because Jones is a supervisor, the fifth element is satisfied. *See Briggs v.* Waters, 455 F.Supp.2d 508, 518 (E.D. Va. 2006).

The defendants counter with a legitimate non-discriminatory reason for the elimination of the plaintiff's position: there was an insufficient amount of work for the plaintiff because there were fewer clients than originally anticipated under the grant. The plaintiff has come forward with evidence that this reason was pretextual. That evidence includes the following:

- Harmon testified that the grant funding was not ending, yet the County Administrator testified that Anthony told him the grant had come to an end (Harmon dep. 13; Kernell dep. 10, 34; Anthony dep. 71).

- Jones told the plaintiff that funding for the position had lapsed because there were fewer clients that originally anticipated under the grant (pl. dep. 124). Jones admitted in his deposition that the grant had not ended (Jones dep. 92).

- When asked to state the reasons the plaintiff's position was eliminated, the defendants included the statement that the plaintiff's "performance was less than exemplary." However, Harmon admitted that the plaintiff's performance was not bad, and Harmon and Kernell testified that performance was not the basis for the job elimination decision (def. inter. resp. no. 4; Harmon dep. 19, 38, 41; Kernell dep. 37-38).

- Even though Jones had been instructed not to fire any employee without first bringing the matter to the Administrator, Jones fired the plaintiff without bringing the matter to the Administrator. The defendants issued a written reprimand to Jones for having disobeyed the instruction (Kernell dep. 20-22; Anthony dep. 65, 78- 80; Jones dep. 81).

As genuine issues of material fact remain, summary judgment on this claim should be denied.

*Retaliation*

Lastly, the plaintiff alleges that she was terminated from employment in retaliation for her participation in the investigation of Gilliam's complaint and for reporting her own complaints of Jones' harassment. In order to establish a *prima facie* case of retaliation, the plaintiff must show that "'(1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmnt., Inc.,* 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)).

Clearly, the first two elements of a *prima facie* case have been met. The plaintiff has also presented evidence showing a causal connection existed. Soon after meeting with the plaintiff, Harmon informed Jones that the plaintiff had accused him of making inappropriate statements (Jones dep. 36-37). Jones responded by accusing the plaintiff of having to leave a previous job because she had an affair with an attorney, an allegation he later admitted was based entirely on hearsay (Jones dep. 52). Further, Dawn Darrington, the direct supervisor who purportedly drew up the plaintiff's evaluation, had previously told the plaintiff that she was mad that Jones was being investigated in the Gilliam matter (pl. dep. 114).

During the meeting with the plaintiff about her job evaluation, Jones issued a "mediocre" performance evaluation to her, despite previously representing to her that he was quite pleased with her performance and that he intended to give her a promotion. He then told that her position was being eliminated (pl. dep. 111, 113, 122; Anthony dep. 69; Jones dep. at 68). However, in explaining his reasons for the elimination, Jones did not begin with the defendants' current stated reason regarding the NEG grant (pl. dep. 122-23). Instead, he told the plaintiff that he could not have someone working for him whom he could not trust and that he did not trust her (pl. dep. 122-25). When the plaintiff objected to the

16

evaluation and the elimination of her position, he stated, "You know, Michelle, my life was turned upside down over the past month or so, so I really don't think you want me to tell you how I feel" (complaint ¶ 23). When the plaintiff later objected to being terminated, her supervisor told her that Jones had said that she was "out of here" (pl. dep. 140).

This court finds that this evidence in addition to the previously cited evidence of pretext creates issues of material fact, and therefore summary judgment should be denied on the retaliation claim.

## **CONCLUSION**

Wherefore, based upon the foregoing,

IT IS ORDERED that the defendant's motion to strike is granted; and

IT IS RECOMMENDED that Greenville County Workforce Development be dismissed as a defendant, and that the defendants' motion for summary judgment be granted as to the hostile work environment sexual harassment claim and denied as to the *quid pro quo* sexual harassment and retaliation claims.

                                                  s/William M. Catoe
                                                  United States Magistrate Judge

November 29, 2007

Greenville, South Carolina